## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| B.L. b/n/f TIM & BRITTNIE EVERITT, | § | |
| and BRITTNIE EVERITT, | § | |
| INDIVIDUALLY, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | CASE NO. 6:23-CV-00042-JDK |
| v. | § | |
| | § | |
| HENDERSON INDEP. SCH. DIST., | § | |
| | § | |
| *Defendant.* | § | |

## REPORT & RECOMMENDATION OF
## THE UNITED STATES MAGISTRATE JUDGE

Before the Court is Defendant's Partial Motion to Dismiss Plaintiffs' Original Complaint. Doc. No. 3. Defendant seeks partial dismissal of Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Having considered the parties' pleadings and the relevant law, the Court **RECOMMENDS** Defendant's Partial Motion to Dismiss (Doc. No. 3) be **GRANTED**.

## BACKGROUND

B.L., by and through her next friends, Tim and Brittnie Everitt ("B.L."), and Brittnie Everitt, in her individual capacity ("B.L.'s mother") (collectively "Plaintiffs") bring this action against Henderson Independent School District ("Defendant" or "HISD") alleging deliberate indifference to bullying and harassment B.L. experienced based on her disability and for retaliation against B.L.'s mother.[1] Plaintiffs assert that B.L. is a person with a disability based on a "history of mental health issues, panic attacks and readily observable related emotional and behavioral concerns."[2]

---

[1] Compl., Doc. No. 1 at ¶¶ 1-2.

[2] *Id.*

1

B.L. is currently fifteen years old and resides with her adoptive parents, Tim and Brittnie Everitt.[3] B.L. attended HISD from approximately 2020 until her parents removed her from HISD in April of 2022.[4] Plaintiffs assert that B.L. suffered from various mental and physical issues prior to the onset of events now in litigation, including having a "fragile mental state," an eating disorder, depression, anxiety, and suicidal ideation.[5] According to Plaintiffs, B.L.'s parents notified HISD of B.L.'s mental health concerns and the existence of an active restraining order against B.L.'s biological father.[6] During this time, B.L. was friends with another HISD student, K.B.[7] The friendship between B.L. and K.B. later ended, and K.B. allegedly began bullying and harassing B.L.[8] Plaintiffs allege that they complained to HISD on numerous occasions about the bullying and harassment of B.L. by K.B. but that HISD "refused to do anything about it."[9] In addition, B.L.'s mother asserts that in retaliation for her advocating for B.L., several individuals employed by HISD or their family members chose to discontinue obtaining cleaning services from B.L.'s mother.[10]

## PROCEDURAL BACKGROUND

Plaintiffs allege various constitutional violations and claims under the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act ("Section 504") against Defendant.[11] Defendant filed a Partial Motion to Dismiss (Doc. No. 3) pursuant to Federal Rule of Civil Procedure 12(b)(6) as to several claims. Subsequently, Plaintiffs abandoned their equal protection and due process claims under the Fourteenth Amendment, retaliation claim under the First

---

[3] *Id.* at ¶¶ 6, 25-26.
[4] *Id.* at ¶¶ 3, 27, 62.
[5] *Id.* at ¶¶ 26-28.
[6] *Id.* at ¶¶ 28-32.
[7] *Id.* at ¶ 33.
[8] *Id.* at ¶¶ 33-41, 44-45, 57-58.
[9] *Id.* at ¶ 1; *see id.* at ¶¶ 34, 42-43, 46-49, 55-56, 59-61.
[10] *Id.* at ¶¶ 2, 63-69.
[11] *See* Compl., Doc. No. 1.

Amendment, and disparate impact claim.[12] After abandoning the above claims, Plaintiffs state that "the only claims left for adjudication before the Court are B.L.'s claims of discrimination based upon disability pursuant to [§ 504] and ADA and the [§ 504] claim related to a 'safe and non-hostile environment.' Additionally, left are [B.L.'s] mother's claims of retaliation based upon the ADA and [§ 504]."[13,14] Defendant moves to dismiss only Plaintiffs' claims for intentional disability discrimination under the ADA and § 504.[15] Therefore, the Court's analysis is limited to those two claims. Defendant's Partial Motion to Dismiss was referred to the undersigned for proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1).[16,17]

## LEGAL STANDARD

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court credits allegations in plaintiff's complaint as true except to the extent allegations are controverted by a defendant's affidavits. *Nunes v. NBCUniversal Media, LLC*, 2022 U.S. Dist. LEXIS 16164, at *4-5 (E.D. Tex. 2022). The Court need not credit conclusory allegations, even when uncontroverted. *Applied Food Scis., Inc. v. New Star 21, Inc.*, 2009 WL 9120113, at *2 (W.D. Tex.  2009) (citing *Panda Brandywine Corp. v. Potomac Elec. Power*, 253 F.3d 865, 868 (5th Cir. 2001)).

---

[12] Pls.' Resp., Doc. No. 6 at ¶ 11; Pls.' Unopposed Mot. to Modify Scheduling Order, Doc. No. 13 at ¶ 7 ("Pls.' Mot. to Modify"); Pls.' Stipulation of Partial Dismissal of Claims with Prejudice, Doc. No. 12 at ¶ 1.

[13] Pls.' Mot. to Modify, Doc. No. 13 at ¶ 10.

[14] Although Plaintiffs "abandon[ed] and withdr[ew] B.L.'s claims related to Equal Protection and Due Process under the 14th Amendment claims, [the] claim of disparate impact under the Rehab Act and [B.L.'s] mother's claim under the 1st Amendment" (Pls.' Resp., Doc. No. 6 at ¶ 11 (emphasis removed)), Plaintiffs continue to argue throughout their Response in support of a due process violation. *See* Pls.' Resp., Doc. No. 6 at ¶¶ 33-35.

[15] Def.'s Partial Mot. to Dismiss, Doc. No. 3 at 15-16.

[16] Order Referring Mot., Doc. No. 8.

[17] The Court notes that it previously set oral argument as to the instant motion to clarify some ambiguity in the responsive pleadings. However, the parties jointly petitioned the Court to issue its recommendation on the pleadings, alone. Pls.' Mot. to Modify, Doc. No. 13.

The Court utilizes a "two-pronged approach" in considering a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, the Court identifies and excludes legal conclusions that "are not entitled to the assumption of truth." *Id.* Second, the Court considers the remaining "well-pleaded factual allegations." *Id.* The Court must accept as true all facts alleged in a plaintiff's complaint, and the Court views the facts in the light most favorable to a plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). A plaintiff's complaint survives a defendant's Rule 12(b)(6) motion to dismiss if it includes facts sufficient "to raise a right to relief above the speculative level" (internal citations omitted). *Id.* In other words, the Court must consider whether a plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," fail to state a claim for which relief can be granted. *Iqbal*, 556 U.S. at 663.

## ANALYSIS

Plaintiffs assert that Defendant failed to accommodate B.L.'s disability in violation of both the ADA and § 504 of the Rehabilitation Act.[18] Plaintiffs allege that this failure to accommodate constitutes intentional discrimination.[19] Defendant moves to dismiss both claims under Federal Rule of Civil Procedure 12(b)(6).[20]

The ADA is a federal anti-discrimination statute aimed at "provid[ing] a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1); *Doe v. Tex. A&M Univ.*, --- F. Supp. 3d ----, 2022 WL 5250294, at *9 (S.D. Tex. 2022); *Smith v. Harris County, Texas*, 956 F.3d 311, 316-17 (5th Cir.

---

[18] Compl., Doc. No. 1 at ¶¶ 95, 102.
[19] *Id*.
[20] Def.'s Partial Mot. to Dismiss, Doc. No. 3 at 15-16.

2020). Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. For purposes of this analysis, the only material difference between § 504 of the Rehabilitation Act and the ADA is that "[t]he causation standard under Section 504 is 'solely by reasons' of disability, 'whereas the ADA applies even if discrimination is not 'the sole reason' for the challenged action.'" *Harrison v. Klein Indep. Sch. Dist.*, 856 F. App'x 480, 482 n. 2 (5th Cir. 2021) (per curiam). The language of the ADA generally tracks that of Section 504. *Delano-Pyle v. Victoria County, Tex.*, 302 F.3d 567, 574 (5th Cir. 2002). Thus, "jurisprudence interpreting either [] is applicable to both." *Id.* (quoting *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000); *see Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010) (stating that "[t]he RA and the ADA are judged under the same legal standards, and the same remedies are available under both Acts.").

For a plaintiff to establish a prima facie case of discrimination under § 504 of the Rehabilitation Act and Title II of the ADA, the plaintiff must allege facts sufficient to prove that

> (1) [she] is a qualified individual within the meaning of the ADA; (2) that [she] is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of [her] disability.

*Doe v. Tex. A&M Univ.*, 2022 WL 5250294, at *9 (quoting *Smith*, 956 F.3d at 317); *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004).

## I.    Whether B.L. is a qualified individual within the meaning of the ADA

Plaintiffs assert that B.L. is a person with a disability due to an alleged "history of mental health issues, panic attacks and readily observable related emotional and behavioral concerns and

treatment for same."[21] Defendant does not dispute the allegation that B.L. is a person with a disability.[22] Therefore, for the purpose of this analysis, the Court assumes that B.L. is a qualified individual within the meaning of the ADA.

## II.    Whether B.L. was excluded from participation in, or denied benefits of, services, programs, or activities for which HISD is responsible, or was otherwise discriminated against by HISD

For B.L. to have been discriminated against by reason of her disability, Plaintiffs must allege facts sufficient to show that B.L. was excluded from participation in or denied the benefits of a public education or otherwise discriminated against by HISD. *See Melton*, 391 F.3d at 671-72. Whether B.L. was "otherwise discriminated against" by HISD will be analyzed under the third prong, as the legal analysis for each is the same.[23]

Plaintiffs state that B.L. was discriminated against because HISD "failed and refused to reasonably accommodate and modify the services needed by B.L. based upon her disability."[24] Defendant argues that the Complaint is "completely devoid of any factual allegations reflecting (1) what accommodations and modifications B.L. needed, (2) whether B.L. requested the accommodations and modifications from [HISD], and (3) how [HISD] responded to any alleged request for need."[25]

As an initial matter, B.L.'s parents chose to remove B.L. from HISD in April of 2022 allegedly because HISD "could not keep their daughter safe."[26] Therefore, B.L. was not *literally* "excluded from participation in or denied the benefits of" a public education by HISD. However,

---

[21] Compl., Doc. No. 1 at ¶ 1.

[22] *See* Def.'s Partial Mot. to Dismiss, Doc. No. 3 *generally*.

[23] *See id.* at 672 n. 3 (stating that "other discrimination" under the second element of a prima facie case need not be addressed separately because it requires the same legal analysis as determining whether Defendant discriminated against Plaintiff on the basis of her disability under the third element of a prima facie case).

[24] Compl., Doc. No. 1 at ¶ 95.

[25] Def.'s Partial Mot. to Dismiss, Doc. No. 3 at 15.

[26] *See* Compl., Doc. No. 1 at ¶ 62.

when a plaintiff has not been entirely prohibited from participating in or receiving the benefits of services, programs, or activities for which the public entity is responsible—in this case, a public education—the plaintiff may argue that she has been denied "meaningful access." *See Melton*, 391 F.3d at 672. The Supreme Court has suggested that a denial of "meaningful access" may be equivalent to a full denial of benefits. *Id*. (citing *Alexander v. Choate*, 469 U.S. 287, 301, 105 S.Ct. 712, 83 L.ed.2d 661 (1985) (stating that "[t]he benefit itself, of course, cannot be defined in a way that effectively denies otherwise qualified handicapped individuals the meaningful access to which they are entitled"). Therefore, the Court presumes Plaintiffs are arguing that B.L. has been denied "meaningful access" to a public education by HISD's allegedly "failing and refusing to reasonably accommodate and modify the services needed by [B.L.] based upon her disability."[27]

Because a public entity's failure to reasonably accommodate the known limitations of persons with disabilities can constitute disability discrimination, there is an affirmative obligation to make reasonable accommodations for disabled individuals. *Windham v. Harris County, Tex.*, 875 F.3d 229, 235 (5th Cir. 2017) (quotations and citations omitted). However, the public entity's

> [m]ere knowledge of the disability is not enough; the service provider must also have understood the limitations [the plaintiff] experienced … *as a result* of that disability. Otherwise, it would be impossible for the provider to ascertain whether an accommodation is needed at all, much less identify an accommodation that would be reasonable under the circumstances. Thus, because the ADA does not require clairvoyance, the burden falls on the plaintiff to specifically identify the disability and resulting limitations, and to request an accommodation in direct and specific terms.

*Id*. at 236 (internal quotations and citations omitted). In the absence of a request for accommodations, a plaintiff can prevail "only by showing that 'the disability, resulting limitation, and necessary reasonable accommodation' were 'open, obvious, and apparent' to the entity's

---

[27] *See* Compl., Doc. No. 1 at ¶ 95.

relevant agents." *Id.* at 237 (quoting *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165 (5th Cir. 1996), *cert. denied*, 519 U.S. 1029 (1996).

Here, Plaintiffs allege that HISD was "on notice of B.L.'s mental health issues," when B.L.'s mother brought HISD a letter from a mental health practitioner treating B.L. and a copy of an active restraining order against B.L.'s biological father.[28] Plaintiffs state that this information was shared with all of B.L.'s teachers.[29] HISD does not dispute having knowledge of B.L.'s mental health issues. Because Defendant, too, does not argue that it lacked knowledge of B.L.'s resulting limitations, the Court assumes that Plaintiffs have factually pled that HISD had knowledge of B.L.'s disabilities *and resulting limitations*. However, the Court notes that "knowledge of a disability is different from knowledge of the resulting limitation. And it certainly is different from knowledge of the necessary accommodation." *Windham*, 875 F.3d at 238; *see Taylor v. Principal Financial Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1996) (stating that "[t]he ADA requires employers to reasonably accommodate limitations, not disabilities."); *see also Southeastern Community Coll. V. Davis*, 442 U.S. 397, 406 (1979) (stating that the "mere possession of a handicap is not a permissible ground for assuming an inability to function in a particular context.").

Defendant argues that Plaintiffs failed to plead any facts to show that a request for accommodations was made in clear and specific terms.[30] The Court agrees. Instead, Plaintiffs allege they made several complaints of bullying and harassment as to the on- and off-campus conduct of another student, K.B., and K.B.'s family members.[31] Plaintiffs do not allege that they requested any accommodations, but merely repeat that "nothing was done."[32] In fact, in several

---

[28] Compl., Doc. No. 1 at ¶ 29.
[29] *Id*. at ¶ 30.
[30] Def.'s Partial Mot. to Dismiss, Doc. No. 3 at 15.
[31] *See* Compl., Doc. No. 1 at ¶¶ 1, 34, 35, 37, 39, 42, 45-47, 51, 55, 56, 59-61.
[32] *Id*. at ¶¶ 40, 42, 43.

instances, Plaintiffs specifically complain that "nothing was done to [K.B.],"[33] and that HISD was "not *correctly* addressing the bullying and harassment[.]"[34] Clearly, attempting to ensure that another student receives some desired consequence cannot constitute a request for a reasonable accommodation for a disability.

In the absence of a request for accommodations, Plaintiffs must have factually alleged that "the disability, resulting limitation, and necessary accommodation" were "open, obvious, and apparent" to HISD. *See Windham*, 875 F.3d at 236. This is a narrow exception that applies to individuals with "outwardly visible" disabilities. *Taylor v. Hartley*, 488 F. Supp. 3d 517, 545 (S.D. Tex. 2020) ("The Fifth Circuit holds that well-understood and outwardly visible disabilities such as blindness, deafness, or being wheelchair-bound can present situations where the disability, resulting limitation, and reasonable accommodation are apparent."). Plaintiffs do not make the argument that B.L.'s resulting limitations and necessary accommodation were "open, obvious, and apparent."

Further, in response to Defendant's argument that Plaintiff never requested accommodations nor was ever denied any requests for accommodations, Plaintiffs state the following:

> B.L. has made numerous factual allegations as to what accommodations and/or modifications were needed or required. This included the need to accommodate her disabilities by seeking safety and greater supervision from the ongoing bullying and harassment she experienced and the duty to provide a safe and non-hostile educational environment. [35]

These statements continue to be insufficient to constitute a request for accommodation in clear and specific terms given the facts alleged. *See Doe v. Tex. A&M Univ.*, 2022 WL 5250294, at *12 (S.D.

---

[33] (*id*. at ¶ 39; *see id*. at ¶¶ 34, 43)
[34] *Id*. at ¶ 60 (emphasis added).
[35] Pls.' Resp., Doc. No 6 at ¶ 45.

Tex. Oct. 6, 2022) (determining that parents of university student with down syndrome had plausibly alleged that they made direct and specific requests for accommodations when they had verbalized that the University's planned support and supervision were insufficient for their daughter's needs during a meeting to discuss their daughter's accommodations and her enrollment in a disability-specific program). Moreover, Plaintiffs did not factually plead that they ever requested the implementation of "greater supervision" to accommodate B.L.'s disabilities.[36,37]

There are simply no allegations to suggest that Plaintiffs ever requested accommodations for B.L.'s disabilities. Plaintiffs' conclusory allegation that HISD "refused" to accommodate or modify services needed by B.L. is insufficient to survive a motion to dismiss. *See Applied Food Scis.*, 2009 WL 9120113, at *2 (citing *Panda Brandywine Corp.*, 253 F.3d at 868) (stating that the Court need not credit conclusory allegations when considering a motion to dismiss). Accordingly, Plaintiffs have not adequately factually alleged that HISD denied B.L. access to a public education by refusing to accommodate her disabilities.

## III.   Whether such exclusion, denial of benefits, or discrimination is by reason of B.L.'s disability

The Court now considers whether Plaintiffs have factually alleged that HISD "otherwise discriminated against" B.L. by reason of B.L.'s disabilities under the second and third prongs of the analysis. *See Melton*, 391 F.3d 669, 671-72; *see also supra* n. 23.

Facts creating an inference of professional bad faith or gross misjudgment are necessary to substantiate a cause of action for intentional discrimination under § 504 or the ADA against a

---

[36] *See* Compl. *generally*.

[37] Many of the alleged incidents Plaintiffs complained to HISD about and wanted "something to be done about" took place outside of school hours and off-campus where no "accommodation" of HISD would have been in effect. *See* Compl., Doc. No. 1 at ¶ 35 (at a 4-H fair where K.B. called B.L. a "bitch"); ¶ 36 (at a volleyball game where B.L.'s friend's parents heard K.B. say that she would "beat [B.L.'s] ass"); ¶ 52 (at a youth project event where the sheriff's department was called to keep the peace between K.B.'s family and B.L.'s family); ¶ 58 (at a local breakfast restaurant where K.B. and her sister "looked at B.L.'s family, followed them, and continued laughing at them").

school district. *D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 455 (5th Cir. 2010) (quotations omitted). A plaintiff's "mere disagreement with the correctness of the educational services rendered to [her] does not state a claim for disability discrimination." *Id.* A showing of bad faith or gross misjudgment requires facts to suggest that the school district departed grossly from accepted standards among educational professionals. *I.A. v. Seguin Indep. Sch. Dist.*, 881 F. Supp. 2d 770, 782 (W.D. Tex. 2012). Negligence generally does not constitute the bad faith or gross misjudgment necessary to substantiate an intentional discrimination claim under § 504 or the ADA. *See id.* at 782-83, n. 10, n. 11, n. 13.

Here, at most, Plaintiffs have alleged that their complaints of bullying were mishandled by HISD and that HISD acknowledged such mishandling.[38] There is no link between the alleged mishandling of the complaints of bullying and B.L.'s disabilities. Nor does mishandling of complaints suggest the professional bad faith or gross misjudgment required. *See I.A. v. Seguin Indep. Sch. Dist.*, 881 F. Supp. 2d at 783 (in discussing *D.A. v. Houston Indep. Sch. Dist.*, 629 F.3d at 455, states that the court found misjudgment and not bad faith where the school district eventually authorized a special education test despite a two-month delay).

Plaintiffs also allege an incident wherein B.L. "arrived at school late and was admonished by [the Assistant Principal] in front of the entire front office staff."[39] Further, Plaintiffs allege that when B.L.'s father contacted the Assistant Principal about the incident, the Assistant Principal responded "[w]hat does it matter how I talk to her?"[40] The Court notes that in Plaintiffs' Response (Doc. No. 6)—which is nearly identical to Plaintiffs' Complaint in the wording and substance of its allegations—this particular allegation is not restated. Even so, assuming the truth of the

---

[38] *See* Compl., Doc. No. 1 at ¶ 48.
[39] Compl., Doc. No. 1 at ¶53.
[40] *Id.*

allegation in the Complaint, as the Court must on a motion to dismiss, there are no facts to suggest that the Assistant Principal treated B.L. differently for being late to school than any other student because of her disabilities. *See Pagan-Negron v. Seguin Indep. Sch. Dist.*, 974 F. Supp. 2d 1020, 1029 (W.D. Tex. 2013) (determining that school district did not discriminate against student on the basis of his disability when principal disciplined student for misbehaving when, at the time, there was no known disability related to behavioral problems but only a known speech impediment).

Viewing all allegations in the light most favorable to Plaintiffs, Plaintiffs failed to state any allegation that would support a conclusion that HISD discriminated against B.L. based on a disability. Conclusory statements by Plaintiffs alleging discrimination based on B.L.'s disabilities are insufficient to overcome a motion to dismiss. *See Panda Brandywine Corp.*, 253 F.3d at 868; *Iqbal*, 556 U.S. at 663. Absent from Plaintiffs' complaint are any factual allegations that would link HISD's treatment of B.L. or HISD's responses to Plaintiffs' complaints of bullying with B.L.'s disabilities.

## IV.    Plaintiffs Request to Amend

Finally, in Plaintiffs' Response to Defendant's Partial Motion to Dismiss (Doc. No. 6), Plaintiffs state that if their claims are denied in total or in part, "Plaintiffs should be permitted to *Amend* that portion deemed infirm."[41] As an initial matter, such a request for leave fails to comply with both, Local Rule CV-7(a) requiring that each motion be filed as a separate document, and Local Rule CV-7(k) requiring that motions for leave to file be filed separately and immediately before the document for which leave is sought. *See G.M. ex rel. Lopez v. Aledo Indep. Sch. Dist.*, No. 4:14-CV-019-A, 2014 WL 1084170, at *6 (N.D. Tex. Mar. 18, 2014), *affirmed order*, *G.M.*

---

[41] Doc. No. 6 at 12, 29.

*ex rel. Lopez v. Shelton*, 595 Fed. Appx. 262 (5th Cir. Dec. 1, 2014), *cert. denied* (denying leave for Plaintiff to file amended complaint in-part because an informal request for leave to amend at the end of Plaintiffs' opposition to the motion violates the local rules).

However, more importantly such an amendment would be futile. *See Williams-Grant v. Arlington Indep. Sch. Dist.*, No. 4:12-CV-709-A, 2012 WL 5871595, at *5 (N.D. Tex. Nov. 19, 2012), *appeal dismissed*, No. 12-11202 (5th Cir. Apr. 16, 2013) (determining that authorizing Plaintiffs to file an amended complaint would be futile because "Plaintiffs were fully informed by defendant's motion and brief of the inadequacies of the allegations of their complaint" and "[p]resumably they put in their response to the motion to dismiss everything they would offer by way of an amended complaint if given an opportunity to amend.").

"The trial court acts within its discretion in denying leave to amend where the proposed amendment would be futile because it could not survive a motion to dismiss." *Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (citing *Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003).

In Plaintiffs' Complaint and all subsequent responses, Plaintiffs never factually alleged that they requested accommodations for B.L.'s disabilities. Even after Defendant pointed out that Plaintiffs failed to plead "(1) what accommodations and modifications B.L. needed, (2) whether B.L. requested the accommodations and modifications from [HISD], and (3) how [HISD] responded to any alleged request for need[,]"[42] Plaintiffs did not attempt to file an amended complaint. Rather, Plaintiffs insisted that "B.L. has made numerous factual allegations as to what accommodations and/or modifications were needed or required." Because Plaintiffs' position is that they have already pleaded facts relating to a request for accommodations, the Court declines

---

[42] (Def.'s Partial Mot. to Dismiss, Doc. No. 3 at 15)

to grant Plaintiffs leave to amend prior to issuance of its recommendation as any amendment would be futile. If Plaintiffs had believed they could allege additional facts to cure pleading defects and wished to file an Amended Complaint after Defendant filed its Partial Motion to Dismiss, Plaintiffs had several months to do so.[43]

## CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that Defendant's Partial Motion to Dismiss (Doc. No. 3) be **GRANTED** and that Plaintiff's claims for intentional disability discrimination under the ADA and § 504 of the Rehabilitation Act be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*,

---

[43] Defendant's Partial Motion to Dismiss was filed on March 27, 2023. Doc. No. 3.

79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C.

§ 636(b)(1) (extending the time to file objections from ten to fourteen days).


So ORDERED and SIGNED this 18th day of August, 2023.


K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE